UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE OMAR CAMPBELL,

        Plaintiff,                        Case No. 1:18-cv-1363

v.                                          Hon. Paul L. Maloney

DAVID SHAVER, *et al.*,

        Defendants.

                                      /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. Plaintiff's amended complaint alleged that defendants failed to protect him from sexual and physical assaults. This matter is now before the Court on motions for summary judgment filed by plaintiff (ECF No. 74) and the two remaining defendants David Shaver and Larry Wenglikowski (ECF No. 79).

        **I.**        **Background**

The events complained about in this case occurred at the MDOC's Richard A. Handlon Correctional Facility (MTU). Plaintiff's amended complaint alleged that defendants violated his Eighth Amendment right to be protected from sexual assault and physical assault by another prisoner. Plaintiff's amended complaint named four defendants: Assistant Deputy Warden (ADW) David Shaver; Assistant Resident Unit Supervisor (ARUS) Larry L. Wenglikowski; Resident Unit Manager (RUM) C. Traylor; and Sgt. Unknown Moore. *See* Opinion (ECF No. 7, PageID.166). The Court summarized plaintiff's claims as follows.

1

In his amended complaint (ECF No. 5-1), Plaintiff alleges that he was sexually assaulted by another prisoner and sought protection on May 30, 2018. Plaintiff initially spoke to a second shift officer, who took Plaintiff to see Lieutenant McDonald.  After interviewing Plaintiff, Lieutenant McDonald explained that Plaintiff would have a security classification interview and would have the opportunity to further detail the sexual abuse.

On June 5, 2018, Plaintiff was interviewed by Defendants Shaver and Wenglikowski, who instructed Plaintiff to provide additional information about the assault.  Plaintiff complied.  At the conclusion of the interview, Defendants Shaver and Wenglikowski informed Plaintiff that the prisoner who had abused him was a known gang member.  However, Defendants Shaver and Wenglikowski stated that Plaintiff's complaint did not warrant protection and that he would be released into the general population.  However, Plaintiff was not immediately released to the general population.

On June 8, 2018, Plaintiff was interviewed a second time by Defendants Shaver and Wenglikowski, who wished Plaintiff good luck and told him to be safe. Plaintiff was then released into the general population. On the same day, after returning to the general population housing unit where he had previously been assaulted, Plaintiff was again assaulted by the same prisoner.[1]  On June 12, 2018, Plaintiff filed two grievances. The first addressed Plaintiff's assault by prisoner David #429460 and the manner in which David's gang associates helped facilitate the assault. The second grievance addressed the manner in which Plaintiff was released back into the general population.

On June 19, 2018, Plaintiff was interviewed by the Security Classification Committee (SCC) concerning Plaintiff's June 8, 2018, request for protection. On June 21, 2018, Defendant Traylor denied both of the June 12, 2018, grievances, stating:

> [Plaintiff] admitted that he never told [Defendant] Wenglikowski or any staff member that he was being sexually harassed or made to perform sexual acts. [Plaintiff] stated "I was too embarrassed to tell staff as I didn't want them to laugh or peg me as a homosexual." I specifically asked [Plaintiff] why didn't he tell the Deputy about the incident that took place while he was being seen by SCC and again

---

[1] The Court notes that plaintiff's amended complaint contained a poorly articulated allegation that "[o]n 6-8-18, after Returning to the same housing unit Plaintiff was once again assaulted by plaintiff sexual abuser known gang associate."  Amend. Compl. (ECF No. 5, PageID.98).   While the Court reasonably read this allegation as stating that "Plaintiff was again assaulted by the same prisoner" on June 8th (*see* Opinion at PageID.166), plaintiff testified at his deposition that on June 8th he was punched – not sexually assaulted – and that the offender was not Andres David, but a prisoner named Hicks. As discussed, *infra*, the MDOC had transferred Andres David to a different housing unit before releasing plaintiff.

2

> he stated, "I didn't say anything because I was embarrassed." It was explained to [Plaintiff] that if he would have expressed any concern about being sexually harassed or assaulted that he would have been placed in a different unit or protective custody immediately until an investigation was conducted. I believe this grievance was written to discredit staff and try to show neglect on their behalf, there is no merit to [Plaintiff]'s allegation and this grievance is denied/resolved.

ECF No. 1-1, PageID.10.

Plaintiff states that Defendant Traylor lied in the grievance response. Plaintiff filed an appeal in which he denies telling Defendant Traylor that he had initially refused to tell staff about the sexual harassment because he was embarrassed. Plaintiff's step II appeal asserts that the grievance response was an attempt to discredit Plaintiff (ECF No. 1-1, PageID.11). Warden Burton denied Plaintiff's step II appeal, stating:

> In your Step I grievance you claim that on 6/5/18 you were asked why prisoner David 429460 hit you, and you told SCC that you were being sexually harassed that day. You claim that David wanted you to perform oral sex during 1600 count. The Acting [Defendant] Wenglikowski cut you short by interrupting you saying, "all I'm doing is trying to get you moved out of the unit."
>
> [Defendant] Traylor answered your Step I grievance. He stated that you admitted to never telling [Defendant] Wenglikowski or any staff member that you were being sexually harassed or made to perform sexual acts. [Defendant] Traylor also states that you said, "I was too embarrassed to tell staff as I didn't want them to laugh or peg [me] as a homosexual." [Defendant] Traylor explained to you that if you would have expressed any concern about being sexually harassed or assaulted you would have been placed into a different unit or protective custody until an investigation was conducted.
>
> After talking with A/Deputy Warden Shaver and A.R.U.S. Wenglikowski, they stated to me that you did provide additional information after the meeting with SCC on 6/5/2018. You were seen again on 6/8/2018 by SCC. Your protection request was denied as the information provided by you did not warrant the protection request. A/Deputy Warden Shaver and A.R.U.S. Wenglikowski also stated to me that at no time during the SCC interview on 6/5/18 and 6/8/18 did you mention anything to them about being sexually assaulted by another inmate. It was not until you were assaulted in

3

> > B-Unit, upon your release from segregation, that you mentioned the sexual assault allegations with SCC members Inspector Blackman and Prison Counselor Daugherty. A P.R.E.A. investigation has since been started regarding your claims of sexual assault.
> >
> > Your appeal has been reviewed by my office and is denied. I am confident a thorough investigation was done concerning your issue. You add no new information within your appeal that would make me reconsider the grievance response given you.
>
> ECF No. 1-1. PageID.12.
>
> In his step I grievance response supplemental form, which was responded to on August 3, 2018, Plaintiff states that he told Defendant Traylor that "prisoner Harvel told Trinity Employee Peabody that [Plaintiff] was being raped." (*Id.*, at PageID.23.) Plaintiff claims that Peabody was making jokes, so Plaintiff went to the officer on duty in the chow hall to request protection. Plaintiff was referred to Lieutenant McDonald to write a statement. (*Id.*) In the investigation summary section, the respondent states that Defendant Traylor interviewed Plaintiff and asked him who he had told about the sexual assault. Plaintiff replied that he had told "no one," but that Peabody knew because he heard other prisoners talking about it. Defendant Traylor asked Plaintiff if he told Peabody that he had been sexually assaulted, and Plaintiff said, "no." (*Id.*) In the decision summary section, the respondent states that on June 19, 2018, Plaintiff told the SCC that he had tried to report the sexual assault on June 8, 2018, but that he was abruptly cut off by Defendant Wenglikowski, who stated that Plaintiff just did not want to go back to the general population. The respondent again noted that Defendant Traylor stated that Plaintiff admitted that he had not told anyone about the sexual abuse because he was embarrassed. (*Id.*)
>
> Plaintiff claims that Defendants violated his Eighth Amendment right to be protected from sexual assault. Plaintiff seeks compensatory and punitive damages, as well as declaratory and equitable relief.

Opinion at PageID.166-169.

The Court evaluated plaintiff's Eighth Amendment failure to protect claim as follows:

> Plaintiff claims that Defendants Shaver and Wenglikowski failed to protect him from the second assault when they returned him to the general population despite knowing that Plaintiff's assailant was a gang member and was likely to assault Plaintiff again. Inmates have a constitutionally protected right to personal

4

> safety grounded in the Eighth Amendment. . . Plaintiff alleges sufficient facts to support his claim that Defendants Shaver and Wenglikowski were aware of an ongoing danger of assault when they ordered Plaintiff to return to the general population despite Plaintiff's request for protection. Plaintiff's Eighth Amendment claims against Defendants Shaver and Wenglikowski are not clearly frivolous and may not be dismissed on initial review.

*Id*. at PageID.172-173 (internal citations omitted).

The Court dismissed plaintiff's claims against defendants Traylor and Moore on initial screening. *See* Order (ECF No. 9). The case proceeded against the two remaining defendants, ADW Shaver and ARUS Wenglikowski, on plaintiff's Eighth Amendment claim that they failed to protect plaintiff from an ongoing danger of assault when they ordered plaintiff to return to the general population despite his request for protection. Plaintiff and the two remaining defendants have moved for summary judgment.

## II.     Motions for summary judgment

### A.     Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

5

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).   However, the Court is not bound to blindly adopt a non-moving party's version of the facts.   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.     Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."   *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).   To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.   *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

6

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations and quotation marks omitted). "Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Given this environment, it is well established that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis omitted). "A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions[.]" *Id*. at 844-45 (internal citations omitted). *See, e.g., Gilland v. Owens*, 718 F. Supp. 665, 688 (W.D. Tenn. 1989) (observing that the violent tendencies of inmates is not within the control of jail officials).

However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To establish an Eighth Amendment claim that a prison official failed to protect an inmate, the inmate must show that the official was deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 828, 832-34; *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.' " *Greene*, 361 F.3d at 294, quoting *Farmer*, 511 U.S. at 829, 847. "Generally, a single

7

isolated attack on an inmate cannot give rise to a deliberate indifference claim because the inmate will be unable to show that officials were consciously aware of the risk of an attack." *McDuff v. Addis*, No. 1:17-cv-912, 2018 WL 3239491 at *3 (W.D. Mich. July 3, 2018) (citing *Lewis v. McLennan*, 7 Fed. Appx. 373, 375 (6th Cir. 2001) (which affirmed dismissal of an Eighth Amendment claim because the plaintiff had not alleged any specific facts which would show that he was in danger of being assaulted by other prisoners). *See Stewart v. Love*, 696 F.2d 43, 44-45 (6th Cir. 1982) (a single, isolated attack was insufficient to state a failure to protect claim). Finally, because courts consider the reasonableness of a prison official's actions, the Supreme Court has instructed that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

    **C.**    **Summary of facts**

The question for the Court is whether a genuine issue of material fact exists to support plaintiff's Eighth Amendment claim that defendants failed to protect him from sexual assaults and physical assaults. Plaintiff gave the following testimony at his deposition.[2] *See* Omar Campbell Dep. (ECF No. 78-1, PageID.437-477).[3] On May 30, 2018, plaintiff was working in MTU's kitchen. PageID.453. On that date, plaintiff told non-party Lt. McDonald

---

[2] In an apparent attempt to create factual issues for purposes of future motions for summary judgment, plaintiff included a "verification" to his amended complaint. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). However, plaintiff's "verification" does not comply with 28 U.S.C. § 1746(2), which requires that the declarant state "under penalty of perjury that the foregoing is true and correct." Here, plaintiff diluted the statutory language, stating that his allegations were true "to the best of my knowledge and belief." Amend. Compl. (ECF No. 10, PageID.188). Accordingly, the allegations in the amended complaint will not be considered to have the effect of an affidavit for purposes of the parties' motions for summary judgment.

[3] Defendants have provided two copies of plaintiff's deposition. The citations used in this report are from the copy attached to defendants' response to plaintiff's motion for summary judgment.

that earlier in the day, his cellmate Andres David hit him in the face. PageID.455. McDonald told plaintiff to write a statement to explain what happened. PageID.455-457. Plaintiff's statement did not include anything about sexual abuse. PageID.456.

At his deposition, plaintiff testified that prisoner David punched him in the face. PageID.457. When asked, "[d]id he do anything else to you?" plaintiff responded, "[h]e wanted me to suck his dick." PageID.457. Plaintiff testified that while he informed Lt. McDonald of something "sexual in nature," he did not include this sexual reference in his written statement. *Id*. When asked why this was not included in the statement, plaintiff testified that:

> Because McDonald told me to state what he did to me physically, and so that's what I did. And I would be able to go into further explanation on my SCC [security classification committee] interview on 6-5-18, that's when I was scheduled to see them.

PageID.457-458.   McDonald placed both plaintiff and David in segregation.   PageID.455.

In support of his claims, plaintiff submitted a copy of the Request for Protection/Investigation Report submitted by Lt. McDonald. *See* Request (ECF No. 83-1, PageID.596).   Lt. McDonald made the request on May 30, 2018, stating:

> Prisoner Campbell has been named as the individual who was at threat from Prisoner David 429460, who is a known Latin Count.   This information was contained in a confidential statement.

The SCC Review and Decision portion of the form, which defendants Shaver and Wenglikowski signed after the June 5, 2018 interview, is illegible.

Plaintiff gave the following testimony at his deposition.   During that SCC interview, defendant Shaver asked plaintiff specifically why prisoner David hit him.   Plaintiff responded that David hit him because he "wanted me to suck his dick."   Campbell Dep. at PageID.458.   Plaintiff testified that he told Shaver that: "I was fearful of [David] and his gang

9

that was helping him facilitate the sexual abuse"; that "five other times that man [David] fuck me in my ass"; and, that he could not recall any specific dates for the alleged assaults other than they occurred when he was David's bunkie.

Plaintiff testified that he told "Prisoner Harvel" and "Trinity Peabody" about the sexual abuse. PageID.460-461. Plaintiff also gave different testimony, stating that he told prisoner Harvel, who then told prisoner Peabody. PageID.460.

Plaintiff testified that he told defendants Shaver and Wenglikowsi that he was being raped on June 5th and June 8th, 2018. PageID.461.[4] However, when defendants' counsel asked plaintiff, "And what exactly did you tell them [*i.e.*, Shaver and Wenglikowski]?", plaintiff refused to answer the question. PageID.461.[5]

In response to a more general question, plaintiff testified that at the June 5th interview, he told Shaver and Wenglikowski that prisoner David was threatening him. PageID.461. Plaintiff stated that he gave them "additional statements" as reasons for protection. PageID.461-462. When asked "what were those additional statements?", plaintiff responded "[a]bout the sexual abuse and who was helping him [David] facilitate." PageID.462. Plaintiff did not identify the nature of the sexual abuse, and referred to those helping prisoner David as "Andres' known gang." *Id*. While plaintiff referred to the gang as a "known gang", he did not know any of their names. *Id*. Nevertheless, plaintiff testified that prisoner Hicks was a member of the gang:

---

[4] The Court notes that plaintiff's deposition transcript sometimes refers to defendant Wenglikowski as "Wenkowsky."
[5] Plaintiff was evasive and argumentative, stating "I'm not refusing, I'm just saying that I'm not going to answer the question. I don't want to answer the question. You just said if I don't -- I got to give an answer so I'm giving an answer, I don't want to answer that question." PageID.461.

10

> . . . but I know one of them that assaulted me on the 8th. After ten minutes of being released from protective custody Prisoner Hicks hit me and that's in my grievances filed on 6- -- that I filed on 6-12-18.

*Id*.

When asked if there were any witnesses to prisoner David's sexual abuse, plaintiff identified "God." *Id*. Plaintiff stated that neither medical staff nor mental health came to see him as required by policy. *Id*. When asked about the previous sexual assaults and whether plaintiff spoke to corrections officers about it, plaintiff refused to answer, stating "I'm not going to talk about the sexual assault." PageID.463. After being reminded that plaintiff filed this lawsuit against defendants alleging specific instances of sexual assault, plaintiff still refused to answer questions related to his history of sexual assaults. PageID.463-464. For example, plaintiff refused to answer the question, "how soon after you became David Andres' [sic] cellmate did the first act of sexual assault occur?". PageID.464. At one point, plaintiff terminated the deposition stating, "I'm done." PageID.464.

Plaintiff resumed answering questions after defendants' counsel advised him:

> Just so that you're aware, we will move to dismiss your case because you're failing to cooperate with the deposition about the information in your complaint. So we will give you another opportunity to continue to cooperate. If you do not we will move to dismiss your case and the court will act accordingly; do you understand, Mr. Campbell?

PageID.465. After this warning, plaintiff testified that his amended complaint "is not about sexual abuse . . . it's about me getting beat up" by "Prisoner Hicks" on June 8th. PageID.466.

In this regard, it is undisputed that Andres David did not assault, "beat up" or punch plaintiff on June 8th. Before releasing plaintiff into his housing unit, the MDOC transferred Andres David to a different unit. *See* Shaver Aff. (ECF No. 78-2, PageID.482); Wenglikowski

11

Aff. (ECF No. 78-3, PageID.487-488); Andres David Lock History (ECF No. 80-5, PageID.529); Jermaine Campbell Lock History (ECF No. 80-6, PageID.531). Nevertheless, plaintiff testified that Andres David physically assaulted him because David was a known gang member who ordered prisoner Hicks to hit plaintiff "[t]en minutes after I was released from protective custody." Campbell Dep. PageID.467-469.

Upon further examination, plaintiff would not answer counsel's questions regarding sexual assaults by Andres David after the June 5th SCC interview. When counsel asked, "And after June 5th, 2018, you were not sexually assaulted again?", plaintiff responded that he was physically assaulted by prisoner Hicks. PageID.472-473.

During his deposition, plaintiff would not give a direct answer as to whether he told defendants that Hicks was a threat:

> A. I was physically assaulted on June 8th, ten minutes after I was released from protective custody and denied protective custody from David Larry – David Shaver and Larry Wenglikowski, the defendants in this case.
>
> Q. Right.
>
> A. After becoming aware of my reasonable fear to be assaulted again.
>
> Q. And that was by a Prisoner Hicks, right?
>
> A. And I was assaulted by a Prisoner Hicks.
>
> Q. Did you tell Defendant Shaver and Wenglikowski that Hicks was a threat to you?
>
> A. I told him that his -- I'm aware of his gang and I know everybody about that so, yes. Prisoner Hicks locked in cell 71 and the statements that they -- one of the statements that they took from me on the 5th, of June 5th, 2018, precisely has Prisoner Hicks' cell number on it. I didn't know his name at the time, but it has his cell number.
>
> Q. How did you know that Prisoner Hicks was a member of a gang?

12

A. How would I not know? I was telling them.

PageID.472-73.

In support of his motion for summary judgment, plaintiff filed a declaration which stated in relevant part that he was "assaulted over several times" after being returned to his housing unit, and that he was in fear of assault and needed protection. Campbell Decl.. (ECF No. 76, PageID.418-419). This declaration cannot support a motion for summary judgment because it contradicts plaintiff's deposition testimony, which identified only one physical assault by Hicks after being returned to his housing unit. *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity").

Plaintiff also included a declaration in opposition to defendants' motion for summary judgment, pointing out that he provided "additional statements" regarding his request for protection and that defendants admitted this to their superiors in response to plaintiff's Step II Appeal. Campbell. Decl. (ECF No. 83, PageID.585).[6] The latter declaration refers to the Step II response given in grievance MTU180600590021z (ECF No. 83-1, PageID.598-602). Plaintiff filed this grievance on June 12, 2018, claiming that he named prisoner Hicks during the June 8th interview. *Id.* The Step II response does not provide any such admissions by defendants. While

---

[6] The Court notes that plaintiff's declaration reads "Plaintiff complied by providing additional statements as as Defendants admits [sic] to thier [sic] suprior [sic] in response to plaintiff [sic] Step II Appeal." Campbell. Decl. (ECF No. 83, PageID.585).

13

the Step II response acknowledged that plaintiff provided some information during the interview, it states that plaintiff did not provide sufficient information to support a protection request and that he said nothing about a sexual assault.  *See* Grievance MTU180600590021z at PageID.601.[7]

For their part, defendants stated under oath that plaintiff did not give them sufficient information to identify any threat other than his former cellmate, Andres David. In his affidavit, defendant Shaver explained the need to obtain verifiable information about a potential threat before a prisoner is placed in protective custody:

> 6. Determining whether permanent protection is needed for a prisoner involves a thorough investigation. Prisoners often provide false information so they can manipulate their housing situation, or attempt to use staff as tools to inconvenience rival prisoners. Accordingly, prisoners that allege a need for permanent protection are placed in temporary segregation so that an investigation can determine the necessity of their transfer, the aggressor's transfer, or some other precautionary measure that complies with MDOC policy and procedure.
>
> 7. If prisoners do not provide verifiable and specific information that warrants protection from identifiable prisoners, the requesting prisoner's claims cannot be deemed credible. Requests for protection from unidentified threats are not requests that I, or the MDOC, can honor because to do so would be to allow each prisoner to pick the facility they would most like to reside in. Such a practice would pose a great threat to the safety and security of MDOC's facilities, MDOC staff, inmates, and public safety.

Shaver Aff. at PageID.481.

Shaver stated that the investigation in the present case involved a claim that Andre David was a potential threat to plaintiff's safety:

> 8. On June 5, 2018, while working at MTU, Prisoner Jermaine Campbell (#745168) was in temporary segregation pending an investigation into his allegations that he needed protection from his former cellmate, Andres David (#429460). Campbell alleged only David was a threat, and he did not identify any other prisoners as potential threats to Campbell's safety.

---

[7] The Court notes that the Step II response in Grievance MTU180600590021z was nearly identical to the Step II response in Grievance MTU180600591021c which was quoted in the Court's screening opinion, *supra*.

> 9. On June 8, 2019, while Campbell still sat in temporary segregation, I again interviewed Campbell to give him another chance to give verifiable information regarding a threat to his safety. I explained that there was no evidence supporting his claim of the need for permanent protection, *i.e.* a transfer. Campbell refused to give any specific information, and at no time did Campbell provide information regarding any threats from prisoners other than David.
>
> 10. Campbell never mentioned a "Prisoner Hicks," or any gang members that he feared. He only ever expressed concern about Prisoner David, who had already been transferred out of Campbell's housing unit. Thus, in accordance with MDOC policy and procedure, Campbell could not be granted permanent protective custody.
>
> 11. Prisoner Campbell never informed me that he alleged to be a victim of sexual assault.

*Id.* at PageID.481-482.

Defendant Wenglikowski provided a similar affidavit, stating that during the June 5, 2018 interview, plaintiff was in temporary segregation pending an investigation into his allegations that he needed protection from Andres David and that plaintiff did not identify any other prisoners as potential threats to his safety other than David. Weglikowski Aff. at PageID.487. During the June 8, 2018 interview, Wenglikowski: explained to plaintiff that there was no evidence to support the need for permanent protection (*i.e.*, a transfer); that plaintiff "refused to give any specific information"; and "at no time did [plaintiff] provide information regarding any threats from prisoners other than David." *Id.* In this regard, plaintiff never mentioned a "Prisoner Hicks" or any gang members that he feared. *Id.* Rather, plaintiff only expressed concern about Andres David "who had already been transferred out of [his] housing unit." *Id.*

Defendants also provided copies of documents related to Hicks' assault. In his Critical Incident Participation Report, non-party Officer Hoppes stated that,

15

> I saw Hicks (349381) strike prisoner Campbell (745168) in the head and torso area with a closed fist in anger. Prisoner Campbell fell to the floor and attempted to sheild [sic] himself from prisoner Hicks' assault. Prisoner Hicks was told to stop by myself and Officer Griffith and he did also allow himself to be placed in handcuffs by this Officer without further incident or resistance.

Hoppes Report (ECF No. 80-7, PageID.540). The Critical Incident documents do not mention involvement by Andres David or a gang. *See* Critical Incident Report Exhibit (ECF No. 80-7, PageID.531-557). Plaintiff was evaluated by a nurse, given a neurological examination, and provided medication (Tylenol) for his complaint of headache and back pain. PageID.535.

### D.     Discussion

Plaintiff's lawsuit alleges three different claims: (1) defendants failed to protect him from prisoner Andres David's sexual assaults; (2) defendants failed to protect him from prisoner David's physical assaults; and, (3) defendants failed to protect him from prisoner Hicks' assault on June 8, 2018.

#### 1.     Andres David's sexual assaults

In his complaint and grievances, plaintiff claimed that he needed protection and identified the threat as his cellmate, Andres David. To prevail on this claim, plaintiff must present evidence from which a trier of fact could conclude that defendants were subjectively aware of the risk posed by Andres David and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 829, 847; *Greene*, 361 F.3d at 294. Plaintiff reported this threat on May 30, 2018, at which time both he and Andres David were placed in segregation. The undisputed record shows that after an investigation, which consisted of interviews on June 5th and 8th, 2018, the MDOC took action by transferring Andres David to another housing unit. Transferring the identified threat, plaintiff's cellmate Andres David, to a different housing unit

16

was a reasonable response to plaintiff's claim of sexual assault. Plaintiff has provided no evidence that Andres David sexually assaulted him after the June 5th interview. Based on this record, there is no basis for a claim that defendants Shaver and Wenglikowski violated plaintiff's Eighth Amendment rights by failing to protect him from the threat of sexual assaults by Andres David. Accordingly, defendants Shaver and Wenglikowski's motion for summary judgment should be granted on this claim.

### 2. Andres David's physical assaults

Plaintiff reported that Andres David punched him on May 30, 2018. As discussed in § II.D.1, *supra*, David was transferred to a different housing unit. Plaintiff has presented no evidence that Andres David physically assaulted him after that date. While plaintiff claims that David ordered Hicks to assault him on June 8, 2018, plaintiff has provided no evidence to support this claim. Accordingly, defendants Shaver and Wenglikowski's motion for summary judgment should be granted on this claim.

### 3. Prisoner Hicks' physical assault

It is undisputed that prisoner Hicks punched plaintiff shortly after his release from segregation on June 8, 2018. Plaintiff claims that defendants Shaver and Wenglikowski violated his Eighth Amendment rights by failing to protect him from Hicks' attack. To prevail on this claim, plaintiff must present evidence from which a trier of fact could conclude that defendants were subjectively aware of the risk posed by Hicks and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 829, 847; *Greene*, 361 F.3d at 294. Defendants deny that plaintiff provided any verifiable information about any threat other than Andres David. During his deposition, plaintiff testified in general terms that he told defendants

Shaver and Wenglikowski, about Andres David's past sexual assaults, David's gang, and David's order to have Hicks assault him. However, when asked about the specific information provided to Shaver and Wenglikowski prior to the Hicks assault, plaintiff did not provide direct answers to counsel's questions; rather, he was evasive, refused to answer questions, and at times gave responses which were so confusing as to be meaningless. Based on this record, the Court concludes that defendants have met their burden showing the absence of a genuine dispute of material fact as to whether plaintiff told them that prisoner Hicks posed a threat. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, however, has not met his burden of presenting sufficient evidence from which a jury could reasonably find that defendants were subjectively aware that prisoner Hicks posed a threat to him. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In short, there is no genuine factual dispute as to whether defendants Shaver and Wenglikowski were subjectively aware of any risk that prisoner Hicks posed to plaintiff. Accordingly, defendants are entitled to summary judgment on this claim.

Furthermore, plaintiff's claim also fails because the Hicks assault was an isolated incident which cannot serve as the basis for an Eighth Amendment claim against defendants. *See Stewart*, 696 F.2d at 44-45; *Lewis*, 7 Fed. Appx. at 375. In this regard, there is no evidence that plaintiff had any interaction with prisoner Hicks in the past. For all of these reasons, defendants Shaver and Wenglikowski's motion for summary judgment should be granted on this claim.

### III.   Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's motion for summary judgment (ECF No. 74) be **DENIED**, that defendants Shaver and Wenglikowski's

motion for summary judgment (ECF No. 79) be **GRANTED**, and that this case be **DISMISSED**.

Dated:  July 7, 2020                                                        /s/ Ray Kent
                                                                                         United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).